## Salem

PHILIP WOHLFORD

v.

COMMONWEALTH OF VIRGINIA

No. 1145-85

Decided December 2, 1986

468

COUNSEL

Charles B. Phillips (Phillips, Doherty & Swanson, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Philip Wohlford (appellant) was convicted of driving under the influence of alcohol and raises two issues on appeal. First, he contends that his conviction should be reversed because the arresting officer failed to comply with the provisions of Code § 18.2-267. Second, he contends that the evidence was insufficient to support the conviction. Finding no reversible error, we affirm.

The facts in this case are submitted on a written statement of facts in lieu of a transcript. On March 8, 1985, at about 2:00 a.m., O. E. Shires, Deputy Sheriff of Botetourt County, observed a car parked on the shoulder of Route 460 and Wohlford standing outside the car. Shires investigated and was told by Wohlford that he and his girlfriend were having a disagreement and had stopped to talk. Shires advised him to leave the area.

A short time later, Shires saw Wohlford turn off Route 460 onto an unmarked secondary road. Shires approached and saw Wohlford's vehicle parked in the middle of the road with the lights off. When Wohlford saw Shires, he drove towards him. Shires again investigated and Wohlford explained that he was continuing to talk with his girlfriend. At Shires's request, Wohlford exited the car and gave Shires his operator's license and registration.

At trial, Shires testified that Wohlford had a moderate odor of alcohol about him and that Wohlford admitted having had "a couple of beers." Wohlford testified that he told Shires he had "several beers." However, Shires testified that Wohlford's girlfriend told him that Wohlford had four drinks and that Wohlford agreed with that statement.

Wohlford testified that he asked Shires to give him a field sobriety test to show that he was not under the influence of alcohol. Shires refused, but asked Wohlford to take a preliminary breath test and Wohlford consented. Wohlford was not advised of any rights concerning the preliminary breath test. After the test was completed, Shires advised Wohlford that he was under arrest for driving under the influence of alcohol. Wohlford was cooperative. Wohlford testified that he directed Shires to his girlfriend's house when Shires took her home. Thereafter, Shires transported Wohlford to the county jail where Wohlford took a breathalyzer test which showed a .11 percent blood alcohol level. At trial, counsel for Wohlford objected to the introduction of the breathalyzer test results. The objection was overruled and Wohlford was convicted of driving under the influence of alcohol.

Wohlford argues that Code § 18.2-267[1] is mandatory and that in order to make a valid arrest, Officer Shires had to advise

[1] At the time of the arrest Code § 18.2-267 provided in pertinent part:

Wohlford (1) of his right to a preliminary test under Code § 18.2-267(a); (2) of his right to refuse the test under Code § 18.2-267(c); (3) that the results could not be used against him in court under Code § 18.2-267(e); and (4) that any refusal to take the test could not be used against him under Code § 18.2-267(c). Wohlford argues that the use of the word "shall" throughout this statute renders it a mandatory statute, thus making the arrest illegal and the subsequent breath test results obtained pursuant to Code § 18.2-268 inadmissible at trial. We disagree.

Wohlford misconstrues the statutory scheme adopted by the legislature of this Commonwealth in the area of driving while under the influence of alcohol (or any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature) and particularly Code § 18.2-266. We note that subsequent to this arrest the legislature amended this section to make it unlawful to drive or operate a motor vehicle while such person has a blood alcohol concentration of 0.10 percent or more by weight by volume as indicated by a chemical test administered in accordance with the provisions of Code § 18.2-268. This amendment was not applicable at the time pertinent here.

■ The purpose of the preliminary breath test is "to permit a preliminary analysis of the alcoholic content of the blood of a per-

---

(a) Any person who is suspected of a violation of § 18.2-266 shall be entitled, if such equipment be available, to have his breath analyzed to determine the probable alcoholic content of his blood.

\* \* \*

(c) Any person who has been stopped by a police officer . . . or by any member of the sheriff's department . . . and is suspected by such officer to be guilty of a violation of § 18.2-266, shall have the right to refuse to permit his breath to be so analyzed, and his failure to permit such analysis shall not be evidence in any prosecution under § 18.2-266, provided, however, that nothing in this section shall be construed as limiting in any manner the provisions of § 18.2-268.

(d) Whenever the breath sample so taken and analyzed indicates that there is alcohol present in the blood of the person from whom the breath was taken, the officer may charge such person for the violation of § 18.2-266 . . . . Any person so charged shall then be subject to the provisions of § 18.2-268 . . . .

(e) The results of such breath analysis shall not be admitted into evidence in any prosecution under § 18.2-266, the purpose of this section being to permit a preliminary analysis of the alcoholic content of the blood of a person suspected of having violated the provisions of § 18.2-266.

(f) Police officers or members of any sheriff's department shall, upon stopping any person suspected of having violated the provisions of § 18.2-266, advise such person of his rights under the provisions of this section.

son *suspected* of having violated the provisions of § 18.2-266." Code § 18.2-267(e) (emphasis added). By providing an immediate chemical test at the scene, the suspected driver and the suspecting officer are provided an impartial arbitrator and whether the suspicion of driving under the influence is well grounded is made clear for the benefit of both.

We note that Code § 18.2-267(f) clearly reflects a legislative policy that law enforcement officers inform a suspect of his rights under this section. Yet the legislature has imposed no specific sanctions for failure to comply with the section. We conclude that the lack of specific sanctions for failure to comply with Code § 18.2-267(f), when read together with other provisions of the Code, evinces clear legislative intent that the failure to comply with Code § 18.2-267(f) does not, standing alone, invalidate the arrest or render the subsequently administered blood or breath test inadmissible. This conclusion is consistent with the purposes of the section and the overall statutory scheme.

Code § 18.2-268 provides for a chemical test to determine blood alcohol content.[2] Code § 18.2-267(c) provides that "nothing in this section shall be construed as limiting in any manner the provisions of § 18.2-268." In addition, Code § 18.2-267(e) provides that neither the preliminary breath test results nor the refusal to take the preliminary test shall be admissible evidence at trial. Accordingly, we hold that Officer Shires's failure to comply with Code § 18.2-267(f) does not render the breath test results obtained pursuant to Code § 18.2-268 inadmissible.

Wohlford contends that his arrest was illegal because of Officer Shires's failure to comply with the provisions of Code § 18.2-267(f) and accordingly that he was entitled to have the "fruits" of that illegal arrest suppressed. However, Officer Shires had adequate probable cause to arrest Wohlford for a violation of Code

---

[2] Code § 18.2-268, known as the "implied consent law," provides in part:

(b) Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a public highway in this Commonwealth, shall be deemed thereby, as a condition of such operation, to have consented to have a sample of his blood or breath taken for a chemical test to determine the alcoholic content of his blood, if such person is arrested for violation of § 18.2-266 or of a similar ordinance of any county, city or town within two hours of the alleged offense.

§ 18.2-266 independent of the preliminary breath test.[3] The moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided probable cause for the arrest. Furthermore, Code § 18.2-267(c) provides that "nothing in this section shall be construed as limiting in any manner the provisions of Code § 18.2-268." Thus, the failure to comply with Code § 18.2-267(f) did not render the results of the breathalyzer test administered at the county jail pursuant to Code § 18.2-268 inadmissible.

Finally, Wohlford contends that even if the breathalyzer test results were admissible at trial, the evidence taken as a whole rebuts the presumption of intoxication created by the introduction of the .11 percent breath test results.[4]

Wohlford argues that he did not exhibit any behavior which supported the finding that he was under the influence of alcohol. At the first stop, Officer Shires told him to leave the area. At the second stop, Wohlford contends he was steady on his feet and requested a field sobriety test. He also argues that his reasons for stopping at both places were logical and that he misstated the number of drinks he had because he was nervous. Finally, Wohlford contends he was alert enough to direct Shires to his girlfriend's house, that he conversed with Shires, and was at all times polite and cooperative.

■ The Commonwealth argues, and we agree, that the factual evidence in this case is sufficient to support Wohlford's conviction. Under familiar principles we note that "[t]he standard for review of criminal convictions requires that we consider the evidence in the light most favorable to the Commonwealth, giving it all infer-

---

[3] Since we conclude that there was probable cause to arrest independent of the preliminary breath test results, we express no opinion on the issue whether suppression of the result of the test administered pursuant to Code § 18.2-268 would be required if the only evidence of intoxication was the result of a preliminary breath test obtained without compliance with Code § 18.2-267(f).

[4] At the time of the arrest, Code § 18.2-266 read: "It shall be unlawful for any person to drive or operate any motor vehicle . . . (i) while such person has a blood alcohol concentration of 0.15 percent or more by weight by volume as indicated by a chemical test administered in accordance with the provisions of § 18.2-268 . . . ." Effective July 1, 1986, the statute was amended and "0.10 percent" was substituted for "0.15 percent." Also, at the time of the arrest, Code § 18.2-269 provided that "it shall be presumed that the accused was under the influence of alcoholic intoxicants" if the blood alcohol level "was at that time 0.10 percent or more by weight by volume."

ences fairly deducible therefrom. A conviction will be affirmed unless it appears from the evidence that it is plainly wrong or without evidence to support it." *Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

■ Code § 18.2-268(i) provides in part: "[T]he court shall, regardless of the result of the blood or breath test or tests, if any, consider such other relevant evidence of the condition of the accused as shall be admissible in evidence." *Accord Brooks v. City of Newport News*, 224 Va. 311, 315, 295 S.E.2d 801, 803-04 (1982). We find that the evidence taken as a whole shows, in addition to the .11 percent blood alcohol content, a consumption of at least four drinks, a moderate odor of alcohol, Wohlford's misrepresentation of the amount he had to drink and parking his car in the middle of the road with the lights off. This evidence was sufficient to support the conviction of driving under the influence of alcohol.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Barrow, J., and Coleman, J., concurred.